DARREN AITKEN (145251)
darren@aitkenlaw.com
ASHLEIGH AITKEN (224125)
ashleigh@aitkenlaw.com
AITKEN AITKEN COHN
3 MacArthur Pl #800
Santa Ana, CA 92707
Phone:  (714) 434-1424
Fax:  (714) 434-3600

ERIC H. GIBBS (178658)
ehg@classlawgroup.com
ANDRE M. MURA (298541)
amm@classlawgroup.com
LINDA LAM (301461)
lpl@classlawgroup.com
GIRARD GIBBS LLP
One Kaiser Plaza, Suite 1125
Oakland, CA 94612
Phone: (510) 350-9700
Fax:(510) 350-9701

*[Additional Counsel Listed on Signature Page]*

*Attorneys for Plaintiffs William Lara, Tommie Pye, Ronald Owens,*
*Edward Delgado, Paul Ciraldo, Teddy Wilson,*
*Forrest W. Dedrick, Dan Hanson, and Chris Rizzitello*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| William Lara, Tommie Pye, Ronald Owens, Edward Delgado, Roshanda Jackson, Paul Ciraldo, Teddy Wilson, Forrest W. Dedrick, Dan Hanson, and Chris Rizzitello Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>VIZIO HOLDINGS, INC., VIZIO, INC., and COGNITIVE MEDIA NETWORKS, INC.,<br><br>Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION AND OVERVIEW OF THE CASE ..............................1

II.     PARTIES ......................................................................................................4

III.    JURISDICTION AND VENUE.....................................................................7

IV.     GENERAL ALLEGATIONS ........................................................................7

        A.    Defendants Collect and Disseminate Users' Personal Data................9

        B.    Vizio Conceals its Data Collection Practices from Users .................13

        C.    Vizio Understands the Private Nature of the Data it Collects ...........14

V.      CLASS ACTION ALLEGATIONS .............................................................14

VI.     CAUSES OF ACTION ...............................................................................19

        Count I - Violations of the Video Privacy Protection Act, 18 U.S.C. §
        2710  19

        Count II - Violation of Electronic Communications Privacy Act, 18
        U.S.C. § 2511 ........................................................................................20

        Count III - Violation of the Prohibition of Disclosure by Persons
        Providing Video Recording Sales or Rentals Without Written
        Consent,  Cal. Civ. Code § 1799.3 .......................................................22

        Count IV - Violations of California's Customer Records Act, Cal. Civ.
        Code § 1798.80.......................................................................................23

        Count V - Violation of California's Unfair Competition Law
        ("UCL"), Cal. Civ. Code § 17200, *et seq*.,....................................24

        Count VII - Violation of the Consumer Legal Remedies Act,  Cal.
        Civ. Code §§ 1750, *et seq*. .................................................................27

        Count VIII - Violations of State Consumer Laws Other Than
        California.................................................................................................29

        Count IX - Unjust Enrichment .................................................................31

        Count X - Invasion Of Privacy................................................................33

VII.    PRAYER FOR RELIEF..............................................................................34

i – CLASS ACTION COMPLAINT

Plaintiffs William Lara, Tommie Pye, Ronald Owens, Edward Delgado, Roshanda Jackson, Paul Ciraldo, Teddy Wilson, Forrest Dedrick, Dan Hanson, and Chris Rizzitello (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendants Vizio Holdings, Inc. ("Vizio Holdings"),Vizio, Inc. ("Vizio, Inc.") and Cognitive Media Networks, Inc. ("Cognitive Media") (collectively, "Defendants" or "VIZIO"). The allegations included herein are based upon personal knowledge as Plaintiffs' themselves and their own acts, and upon information and belief and the investigation of Plaintiffs' counsel.

## I.    INTRODUCTION AND OVERVIEW OF THE CASE

1.    Television ownership and viewing has become ubiquitous in the United States in the decades since the National Broadcasting Company (NBC) officially began regularly scheduled television broadcasting in New York on April 30, 1939, with the opening of the 1939 New York World's Fair.  Since that time, television technology has steadily advanced from mechanical television, to electronic transmission using cathode ray tubes and, later, iconoscopes transmitting black and white pictures, to the introduction of color broadcasts in 1951, to larger and flatter screens, digital TV, High Definition TV, and, most recently, so-called Smart TV's, or "hybrid TVs," which integrate television set technology with internet and web 2.0 features; a convergence of computers with TV, immeasurably expanding usage and viewer choices.

2.    More than 96% of households in the United States own one or more TVs in their homes, with an average of three per household.  Watching TV has long been one of America's favorite pastimes, ingrained into the tapestry of American life and culture.  Most Americans cannot imagine a world without television.  Many have never known life without TV.

3.     For well over fifty decades hundreds of millions of people have grown accustomed to viewing their TV in the ***privacy of their own homes***.  The unfettered ability to turn on one's TV and select and control whatever programming one elects to watch on that TV is a basic freedom that consumers exercise daily, without any concern in a free and democratic society that an Orwellian "big brother" may actually be watching them while they enjoy a cornucopia of entertainment, news, cultural, sporting, arts and cinematic offerings, whether via satellite, cable, non-cable, streaming or over the internet.

4.     The TV set has become an indispensable furnishing, as important to consumers' joy, comfort and living experience as a sofa, bed, refrigerator, microwave or kitchen table.  Just as we eat and sleep in the ***privacy of our own homes*** — what any American would view as a basic right — so too, do we freely and unabashedly watch our TVs, many of which are "hybrid" or Smart TVs that integrate the internet through a convergence of computer and television technology.

5.     Among the tens of millions of television consumers are individuals in households who own or otherwise use the approximately ***ten million*** VIZIO Smart TVs equipped with the company's VIZIO Internet Apps (VIA or VIA Plus) smart platform, with its tracking algorithm called "Smart Interactivity."

6.     This class action, brought against VIZIO and Cognitive Media, arises from Defendants' collection of the private information of users and purchasers of VIZIO "smart" televisions.  This information, based on the viewing habits of users in the privacy of their own homes and collected without the knowledge or agreement of consumers, is sold by Defendants to third parties, again without the consent or knowledge of consumers.  Defendants' collection, dissemination and profiteering from this unauthorized collection of personal information violates federal and state laws and the privacy rights of consumers.

2 – CLASS ACTION COMPLAINT

7.     VIZIO, headquartered in Irvine, California, designs, manufactures, markets and distributes consumer electronic devices.  One of the largest TV manufacturers in the United States, VIZIO manufactures and markets a broad range of Smart TVs, televisions that incorporate internet access, either through wired Ethernet connections or through wireless or "wi-fi" internet connections to access video streaming services including, but not limited to Hulu, Amazon Instant Video, Netflix and YouTube.

8.     Beginning no later than late October, 2015, VIZIO began using the networking feature of its Smart TVs as a means of collecting data from the users and purchasers of its Smart TVs.  This data included, among other things, details regarding users' home networks, the identity of their cable or satellite television providers, and details regarding the content, including shows, movies, commercials and channels viewed.  In an October 2015 filing with the Securities Exchange Commission ("SEC"), VIZIO acknowledged that it was using the connectivity features of its Smart TVs as a means of collecting data from "over 10 million VIZIO connected units, or VCUs."  According to VIZIO, it intended to utilize these "VCUs" and the Company's proprietary "Inscape Data Services" to "capture real-time viewing behavior data from our VCUs and enable us to provide it to advertisers and media content providers."

9.     Inscape Data Services was created by VIZIO following its August 2015 acquisition of Cognitive Media Networks, Inc.  Prior to its purchase by VIZIO, Cognitive Media described itself as providing Automatic Content Recognition or ACR to content providers, advertisers and others.  According to Cognitive Media, ACR "makes Smart TVs aware of the programming they are displaying," allowing its customers and broadcasters to "know which TVs are displaying their content."  ACR allows for the collection of a broad range of data

about consumer viewing habits, including identifying programming watched, video games played, and third party services used, etc.

10.    With the acquisition of Cognitive Media, VIZIO, in concert with Cognitive Media, has collected, shared, and profited from the personal data funneled to the Company through the Smart TVs that it has sold to millions of consumers.   The collection, dissemination and profiting from this personal data was all done without the knowledge or agreement of consumers.   The software allowing VIZIO to collect this data was either included in new Smart TVs or installed in previously sold Vizio Smart TVs through the means of an automatic software update.    Unbeknownst to users, the data collection software, which VIZIO dubbed "Smart Interactivity," is turned on by default, without the consent of users and can only be disabled by accessing a complex set of menu commands.

11.    Until just recently, those who own such VIZIO Smart TVs did not realize that while they were watching their TVs ostensibly in the comfort and sheltered privacy of their own homes, their VIZIO Smart TV has been watching them.   In effect, borrowing from George Orwell's classic novel, "Viz Brother is watching," and all the while making money at the expense of consumers' privacy, as more fully discussed below.

## II.    PARTIES

### Plaintiffs

12.    Plaintiff William Lara, an individual, is a citizen and resident of Spring Hill, Florida.   Plaintiff Lara purchased a VIZIO 70 inch E701i-A3 Smart TV at Wal-Mart in 2013 for approximately $1,300.

13.    Plaintiff Tommie Pye, an individual, is, and was at all relevant times was, a citizen and resident of Jonesboro, Georgia.   Plaintiff Pye purchased a

VIZIO 60 inch E-series Smart LED TV at Wal-Mart on November 28, 2013 for $688.

14. Plaintiff Ronald Owens, an individual, is, and at all relevant times was, a citizen and resident of Baltimore, Maryland. Plaintiff Owens purchased a VIZIO 40 inch E400i-B2 Smart TV at Wal-Mart on December 20, 2014 for $401.74.

15. Plaintiff Edward Delgado, a natural person, is, and at all relevant times was, a citizen and resident of New Braunfels, Texas. Plaintiff Delgado purchased a VIZIO 47 inch E472VL Smart TV at Costco on December 1, 2011 for $699.99 and a VIZIO 37 inch E371VL Smart TV at Wal-Mart on December 20, 2012 for approximately $400.00.

16. Plaintiff Roshanda Jackson, a natural person, is, and at all relevant times was, a citizen and resident of Houston, TX. Plaintiff Jackson purchased a VIZIO 40 inch E-400i-B2 Smart TV at Best Buy on December 6, 2014 for $369.99.

17. Plaintiff Paul Ciraldo, an individual, is and at all relevant times was, a citizen and resident of Akron, Ohio. Plaintiff Ciraldo purchased a VIZIO 50 inch E500i-A0 Smart TV at Best Buy in 2014 for $699.99.

18. Plaintiff Teddy Wilson, an individual, is, and at all times was, a citizen and resident of Birmingham, Alabama. Plaintiff Wilson purchased a VIZIO 50 inch E500i-B1 Smart TV at Sam's Club in 2014 for approximately $1,000.

19. Plaintiff Forrest W. Dedrick, an individual, is and at all relevant times was, a citizen and resident of Moreno Valley, California. Plaintiff Dedrick purchased a VIZIO Smart TV at Best Buy in 2015.

5 – CLASS ACTION COMPLAINT

20.     Plaintiff Dan Hanson, an individual, is and at all times relevant was, a citizen and resident of Roseburg, Oregon.  Plaintiff Hanson purchased a VIZIO 55 inch E550i-B2E Smart TV at Wal-Mart on January 15, 2015 for $637.83.

21.     Plaintiff Chris Rizzitello, an individual, is and at all times relevant was, a citizen of Cairo, New York.  Plaintiff Rizzitello purchased a VIZIO 42 inch M422i-B1 Smart TV at Wal-Mart in 2015.

22.     The Smart TVs purchased by each of the Plaintiffs were equipped with or later updated to include VIZIO's Smart Interactivity.  All of the Plaintiffs use or have used their Smart TV's for internet services.

**Defendants**

23.     VIZIO Holdings, Inc., is a Delaware Corporation that maintains its principal place of business at 36 Tesla, Irvine California.

24.     VIZIO, Inc., is a California Corporation that maintains its principal place of business at 39 Tesla, Irvine, California.  VIZIO, Inc. is registered to conduct business in the State of California.  VIZIO, Inc. designs, markets, manufactures and distributes for sale, consumer electronic devices, including, but not limited to, Smart TVs throughout the United States, including this District.

25.     Defendant Cognitive Media Networks, Inc., is a Delaware corporation that is registered to conduct business in California.  Cognitive Media maintains its principal place of business at 39 Tesla, Irvine, California.  Cognitive Media develops ACR software platforms for certain consumer electronic devices, including Smart TVs.  The use of ACR allows for the collection of personal data, including, but not limited to, viewing information, from users of devices equipped with ACR.  Cognitive media was acquired by VIZIO, Inc. in August 2015.

**III.   JURISDICTION AND VENUE**

26.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, including a number of the Plaintiffs, are citizens of states different than that of Defendants.

27.    This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 as to claims brought pursuant to the Video Privacy Protection Act, 18 U.S.C. § 2710 and the Electronic Communications Privacy Act, 18 U.S.C. § 2511.

28.    This Court has supplemental jurisdiction over state law claims asserted herein pursuant to 28 U.S.C. § 1367.

29.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are authorized to conduct business within this District, are headquartered in this District, have intentionally availed themselves of the laws in this District, and conduct substantial business, including acts underlying the allegations of this complaint, in this District.

**IV.   GENERAL ALLEGATIONS**

30.    VIZIO bills itself as a leading high definition television producer in the United States.  In addition to televisions, VIZIO manufactures and sells various audio and entertainment products, including sound bars, tablets, DVD players, and Blu-ray players.  VIZIO generated approximately $3 billion in revenue in 2014.

31.    VIZIO is one of the largest sellers of high definition televisions in the United States.  In a Form S1/A filed with the SEC on October 22, 2015, by Vizio

Holdings (the "S1/A"), the Company describes itself as "transforming the way consumers discover and experience media content through our connected entertainment platform."  The Company claims to have sold more than ten million "VIZIO Connected Units" as of October 2015, selling more than seven million Smart TVs in 2014 alone.

32.   Cognitive Media is an advertising company that provides Automatic Content Recognition software (hereinafter "ACR software" or "tracking software") for Smart TVs.  This software enables Defendant to monitor and indentify Class Members' video viewing habits.  Cognitive provides this secretly collected information to third-party advertisers and content providers who, in turn, display targeted advertisements based on this collected information  to consumers.

33.   VIZIO Smart TVs provide consumers with multiple access points to visual, audio, and other video content.  As with many Smart TVs, VIZIO Smart TVs are equipped with HDMI connections, coaxial connectors, analog audio outputs and inputs, and various video input connectors.

34.   VIZIO Smart TVs are also equipped with the ability to connect to the internet via wireless internet networking or wi-fi.  Specifically, VIZIO Smart TVs allow consumers to access the wi-fi networks via the VIZIO Internet App and the VIZIO Internet App Plus software services.  These applications allow consumers to access and watch various forms of audio and visual entertainment online, as well as access online news, weather, and entertainment sources.

35.   VIZIO Smart TVs are delivered to consumers with many pre-installed applications.  These include such popular internet applications as Netflix, YouTube, Amazon Pandora, Hulu, Twitter, and more.  Many of these applications stream video to consumers via VIZIO Smart TVs.  In fact, the VIZIO Smart TV remote control contains shortcuts providing direct access to some of the more

1  popular video streaming services, such as Netflix, with the push of one, direct-
2  access button.



More than 3 billion hours of entertainment content streamed

36.   Additionally, VIZIO Smart TVs provide access to cable television, satellite television, and on-demand viewing services.  Such services also stream video and audio programming directly to Vizio Smart TVs.

A.   **Defendants Collect and Disseminate Users' Personal Data**

37.   Using the VIA software platform built into its Smart TVs, VIZIO integrates its internet-connected media services, such as Netflix, Hulu, Amazon Video and YouTube with its Inscape Data Services.  In turn, VIZIO's Inscape data services capture a broad range of personal information from users, including viewing behavior data from their VCUs, which is collected by VIZIO in real time. VIZIO can, in turn, provide this and other collected data to advertisers and media content providers.  As set forth in the S1/A, the Inscape Data Services "capture, in real time, up to 100 billion anonymized viewing data points each day from our over 10 million VCUs.  Inscape collects, aggregates and stores data regarding most content displayed on VCU television screens, including content from cable

9 – CLASS ACTION COMPLAINT

and satellite providers, streaming devices and gaming consoles."  According to VIZIO, the "highly specific viewing behavior data" is collected "on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers and to drive their delivery of more relevant, personalized content through our VCUs."



38.    VIZIO's Inscape Data Services are drawn largely, if not completely, from technology developed by Cognitive Media.  Previously based in San Francisco, Cognitive media was acquired by VIZIO on August 10, 2015, for approximately $50 million in cash.  Prior to the acquisition, VIZIO was an investor in Cognitive media, holding approximately a 10% share in the company.

39.    VIZIO's S1/A also identifies the Company's Inscape Data Services as a potential source of revenue, stating:

> Our Inscape data services capture, in real time, up to 100 billion anonymized viewing data points each day from our over 10 million VCUs. Inscape collects, aggregates and stores data regarding most content displayed on VCU television screens, including content from

cable and satellite providers, streaming devices and gaming consoles. Inscape provides highly specific viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers and to drive their delivery of more relevant, personalized content through our VCUs. Although we are still in the early stages of commercializing Inscape and have yet to generate meaningful revenue from it, we believe it provides an attractive value proposition to advertisers and media content providers which will enable us to further monetize it in the future.



40.     VIZIO refers to the feature that recognizes on-screen content and collects consumer data on its Internet-connected VIZIO Smart TVs as "Smart Interactivity."   These "Smart Interactivity" features are integrated into VIZIO Smart TVs by default and cannot be disabled without going through several steps in the TVs' built in menus or by contacting VIZIO customer service for assistance. Moreover, if for any reason a VIZIO Smart TV is reset to its factory defaults, Smart Interactivity is restored without the user's knowledge.  Older VIZIO Smart

TV models, purchased before Smart Interactivity was integrated directly into the TVs, are automatically updated to enable data capture.

41.    Smart Interactivity collects a broad range of data regarding the content displayed on the TV, including the identity of their broadcast, cable, or satellite television provider, the television channels, programs and commercials viewed, the date and time of viewing, and whether the broadcast was watched live or at a later time.

42.    In late October, 2015, VIZIO began sharing customer viewing data, bundled with additional personal information, with media and data analytics companies.  Using customer IP addresses[1] and other data captured from users' personal networks, including MAC addresses,[2] VIZIO and these data and analytics companies are able to generate customized advertisements which are then displayed not just on users' Smart TVs, but on other devices connected to the same network associated with the users' IP address, such as smart phones, tablet computers or laptop computers owned by the user.  Thus, any device connected to a user's network, including those used by minors, can receive advertisements based on the user's viewing habits.

43.    The U.S. National Institute of Standards and Technology identifies both IP and MAC addresses as Personally Identifiable Information, *i.e.*, information that includes a "persistent static identifier that consistently links to a particular person or small, well defined group of people."  Nat'l. Ins't. of Standards

---

[1]    "IP address" refers to an Internet Protocol address, a numerical label assigned to each device in a computer network.  IP addresses can be used to identify the location of a network and can be used to identify the various devices that are connecting to a particular network.

[2]    "MAC address" refers to a media access control address, a unique identifier assigned to the network interface of a network-cable device.  Any device connecting to a network, including smartphones, tablet computers, lap top computers, Smart TVs, streaming media players, etc. has a unique MAC address.

12 – CLASS ACTION COMPLAINT

1    and Tech., Guide to Protecting the Confidentiality of Personally Identifiable

2    Information (PII) (2010) at 2-2.   Because MAC addresses are unique to each

3    device, a device's MAC address can be used to identify a person and track his or

4    her location whenever that person passes a wi-fi hotspot.   Use of MAC addresses

5    in this manner allows the tracking of any device as it moves from network to

6    network.   This is especially relevant to mobile devices, such as smartphones,

7    tablet computers and laptops.

8        **B.    VIZIO Conceals its Data Collection Practices from Users**

9        44.    Plaintiffs and members of the putative Class were not, and are not,

10   informed by Defendants that their viewing behavior and personal information,

11   including unique IP and MAC addresses, are collected and disseminated to

12   interested third parties through the use of their Smart TVs.  Nor did Plaintiffs and

13   members of the Class consent to having their information collected and

14   disseminated.

15       45.    Defendants seek to profit from the collection and dissemination of

16   consumer information and viewing data. In its S1/A, VIZIO asserts that its

17   "discovery and engagement software," powered by the software created by

18   Cognitive Media, "enhances the value of its products"  and "provides an attractive

19   value proposition to advertisers and media content providers which will enable

20   [VIZIO] to further monetize it in the future."  Because Defendants recognize that

21   "[o]ur customers may also object to or opt out of the collection and use of their

22   data, which may harm our business," VIZIO conceals the collection of this data

23   and does not seek the informed consent of its users prior to activating Smart

24   Interactivity.[3]

---

25

26   [3]    VIZIO, Inc. (2015). *Form S-1 Report*. Retrieved from
     https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612

27   ds1.htm

28

**C.      VIZIO Understands the Private Nature of the Data it Collects**

46.    As set forth in VIZIO 's S1/A,

[w]e collect, process, store, use and to some extent disclose information collected from or about purchasers and users of our products, and from the devices themselves. ***The collection and use of personal information***, and analysis and sharing of anonymous user data and unique identifiers to inform advertising or analyze viewing behaviors ***subject us to legislative and regulatory burdens***, may expose us to liability, and our actual or perceived ***failure to adequately protect consumer data*** could harm our brand, our reputation in the marketplace and our business.

[Emphasis added].

47.    VIZIO further recognizes that "[p]rivacy laws and regulations, if drafted or interpreted broadly, could be deemed to apply to the technologies we use to collect, analyze and share viewing behaviors or other data collected from our Smart TVs or consumers, and could restrict our information collection methods or decrease the amount and utility of the information that we would be permitted to collect and share."

48.    Despite its recognition of the sensitivity of the personal data it is collecting, VIZIO collects, disseminates and profits from the dissemination of this data without the informed consent of users.


**V.      CLASS ACTION ALLEGATIONS**

**Nationwide Class**

49.    Pursuant to Fed. R. Civ. P. 23, all Plaintiffs bring their claims on behalf of a nationwide class (the "Class" or the "Nationwide Class") defined as:

14 – CLASS ACTION COMPLAINT

All persons in the United States who purchased, for their personal or household use, Vizio televisions that were equipped with, or thereafter updated to include, Smart Interactivity data collection software.

**California Class**

50.     Plaintiff Dedrick also asserts claims on behalf of a class of California consumers, consisting of all "citizens of California, who purchased VIZIO Smart TVs (the "California Class").   The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) are met with respect to the California Class.

**Non-California Separate State Classes**

51.     Plaintiffs other than Dedrick also assert claims on behalf of respective classes for the States in which each Plaintiff resides and is a citizen. The requirements of Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) are met with respect to each separate class for the following states other than California: New York, Florida, Georgia, Maryland, Ohio, Alabama, Texas and Oregon (hereinafter collectively the "Non-California Separate State Classes").

52.     Excluded from the Nationwide, and California and Non-California Separate State Classes defined above are Defendants and their current employees.

53.     **Numerosity**.   The Class is so numerous that joinder of all members is impracticable. The Class includes purchasers and users of VIZIO Smart TVs. According to statements by VIZIO filed with the SEC, there are "over 10 million VIZIO connected units," through which Vizio has collected personal identifiable information.

54.     **Commonality**. There are numerous questions of law and fact common to Plaintiff and the members of the Class, including the following:

- whether Defendants engaged in the wrongful conduct alleged herein;

15 – CLASS ACTION COMPLAINT

- whether Defendants owed a duty to Plaintiffs and the members of the Class to adequately protect their personal identifiable information;

- whether Defendants failed to take reasonable steps to maintain the confidentiality of the personal identifiable information of Plaintiffs and the members of the Class;

- whether Defendants failed to take reasonable steps to prevent the dissemination of the personal identifiable information of Plaintiffs and the members of the Class to third parties;

- whether Defendants profited from the wrongful disclosure of the personal identifiable information of Plaintiffs and the members of the Class to third parties;

- whether Defendants made material misrepresentations regarding the collection, retention and dissemination of personal identifiable information collected from Plaintiffs and the members of the Class;

- Whether Defendants were required to gain the informed consent of users in order to capture, retain, disseminate and profit from the dissemination of, the personal identifiable information of Plaintiffs and the members of the Class;

- whether Defendants' conduct violated the VPPA;

- whether Defendants' conduct violated the California Customers' Records Act;

- whether Defendants' conduct violated the Consumer Legal Remedies Act;

- whether Defendants' conduct violated the California Unfair Competition Law

- whether Plaintiffs and the members of the Class suffered injury, including ascertainable losses, as a result of Defendants' conduct (or failure to act);
- whether Plaintiffs and the members of the Class are entitled to recover damages; and
- whether Plaintiffs and the members of the Class are entitled to equitable relief, including injunctive relief and/or other equitable relief.

55. **Typicality**. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendants' uniform misconduct described above and assert the same claims for relief. The same events and conduct that give rise to Plaintiffs' claims are identical to those that give rise to the claims of every other member of the Class because Plaintiffs and each member of the Class are persons that have suffered harm as a direct result of the same conduct (and omissions of material facts) engaged in by Defendants.

56. **Adequacy**. Plaintiffs and their counsel will fairly and adequately represent the interests of the members of the Class. Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the Class. Plaintiffs' lawyers are highly experienced in the prosecution of consumer class actions and complex litigation.

57. **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiffs and the members of the Class. Plaintiffs and the members of the Class have been harmed by Defendants' wrongful actions and inaction. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendants' wrongful actions and inaction.

58.     A class action is an appropriate method for the fair and efficient adjudication of this controversy.  There is no special interest in the members of the Class individually controlling the prosecution of separate actions.  The loss of money and other harm sustained by many individual members of the Class will not be large enough to justify individual actions in proportion to the significant costs and expenses necessary to prosecute this action.  The expense and burden of individual litigation makes it impossible for many members of the Class individually to address the wrongs done to them.  Class treatment will permit the adjudication of claims of members of the Class who could not afford individually to litigate their claims against Defendants.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would entail.

59.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Furthermore, Defendants transact substantial business in and perpetuated their unlawful conduct from California.   Defendants will not be prejudiced or inconvenienced by the maintenance of this class action in this forum.

60.     Class certification is therefore appropriate under Fed. R. Civ. P. 23(a) and (b)(3).  The above common questions of law or fact predominate over any questions affecting individual members of the Class, and class action is superior to other available methods for the fair and efficient adjudication of the controversy.

61.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendants have acted or have refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

18 – CLASS ACTION COMPLAINT

62.     The expense and burden of litigation will substantially impair the ability of Plaintiffs and members of the Class to pursue individual lawsuits to vindicate their rights.  Absent a class action, Defendants will retain the benefits of their wrongdoing despite their serious violations of the law.

## VI.     CAUSES OF ACTION

### Count I

### Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710

### (On Behalf of all Plaintiffs and the Nationwide Class)

63.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

64.     Pursuant to the Video Privacy Protection Act ("VPPA"), Defendants are, and at all relevant times have been, "video tape service providers," because VIZIO is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

65.     Pursuant to the VPPA, video tape service providers "shall destroy personally identifiable information as soon as practicable, but no later than on the date the information is no longer necessary for the purpose for which it was collected." 18 U.S.C. § 2710(e).

66.     As a result of its failure to destroy users' personally identifiable information as soon as practicable from the date the information was no longer necessary for the purpose for which it was collected, Defendants have violated 18 U.S.C. § 2710(e).

67.     Under the VPPA, Defendants are required to maintain the confidentiality of customers' personally identifiable information and is barred from disclosing said data to "any person without the informed, written consent of

19 – CLASS ACTION COMPLAINT

the consumer given at the time the disclosure is sought."  18 U.S.C. § 2710(b)(1)-(2).

68.   As owners and users of VIZIO Smart TVs, Plaintiffs' personally identifiable information was disclosed for marketing and advertising purposes without their informed, written consent.

69.   As a result of Defendants' conduct described herein and the Company's violation of 18 U.S.C. § 2710, Plaintiffs and the members of the Class have suffered injuries. Plaintiffs, on behalf of themselves and on behalf of the Class, seek an order enjoining Defendants' conduct described herein and awarding themselves and the Class the maximum statutory and punitive damages available under 18 U.S.C. § 2710(c), an award of attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

## Count II

## Violation of Electronic Communications

## Privacy Act, 18 U.S.C. § 2511

## (On Behalf of all Plaintiffs and the Nationwide Class)

70.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

71.   Defendants have intentionally intercepted or procured to be intercepted Plaintiffs' and Class Members' electronic communications without Plaintiffs' or Class Members' knowledge, authorization, or consent in violation of 18 U.S.C. § 2511.

72.   Defendants have also intentionally used or procured to be used a device to intercept the above referenced electronic communications.

73.   Defendants intercepted the content of the programs viewed by Plaintiffs and the Class Members on their Smart TVs, as alleged herein.

20 – CLASS ACTION COMPLAINT

74.     Through the loading and enabling of ACR software on Smart TVs, and Cognitive Media Networks' provision of the software, collection of communications, and provision of services to permit the illegal interception of electronic communications as alleged herein, Defendants set out on a course of conduct with the intention of intercepting the communications of Plaintiffs and members of the Class.

75.     An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce.  This definition includes television programming.

76.     Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally collecting, intercepting, endeavoring to intercept, or procuring another person to intercept or endeavor to intercept Plaintiffs' and Class Members' electronic communication.

77.     Defendants violated 18 U.S.C. § 2511(c) by intentionally collecting, transmitting, storing, disclosing or endeavoring to disclose, to any other person, the contents of Plaintiffs' and the Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and the Class Members' electronic communications.

78.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using, or endeavoring to use, the contents of Plaintiffs' and the Class Members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and Class Members' electronic communications.

79.     Neither Plaintiffs nor Class Members authorized or consented to Defendants' interception of electronic communications.

80.     Section 2520 of the ECPA provides a private cause of action and allows for declaratory and equitable relief as appropriate, damages, disgorgement of profits, and statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual punitive damages, and reasonable attorney's fees and costs.  The Defendants committed a violation of the ECPA as to each of every one of the individual Plaintiffs and the Class Members on each and every occasion on which such consumers' personal viewing habits and privacy intercepted, including when it was affected, monitored or involved and/or when intercepted and distributed, disseminated or sold to third parties, without their knowledge or consent.

**Count III**

**Violation of the Prohibition of Disclosure by Persons Providing Video Recording Sales or Rentals without Written Consent,**

**Cal. Civ. Code § 1799.3**

**(On Behalf of All Plaintiffs, the Nationwide Class and the California Class)**

81.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

82.     This cause of action is asserted by all Plaintiffs on behalf of themselves and the Nationwide Class and also by Plaintiff Dedrick on behalf of the California Class.

83.     In violation of Cal. Civ. Code, § 1799.3(a), Defendants, while providing video recording sales or rental services to Smart TV owners who connected their televisions to the internet, accessed, monitored, sold and disclosed each such consumers' personal information, including their sales or rental information, to third parties, without the written consent of the Smart TV user, as more fully discussed above.

84.    Defendants willfully violated § 1799.3(a), as freely admitted in statements to the Securities and Exchange Commission, the media, and in VIZIO's prospectus.

85.    Plaintiffs and Class Members may recover in this civil action, a civil penalty not to exceed $500 for each violation.

### Count IV

**Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80**

**(On Behalf of all Plaintiffs, the Nationwide Class and the California Class)**

86.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

87.    This cause of action is asserted by all Plaintiffs on behalf of themselves and the Nationwide Class and also by Plaintiff Dedrick on behalf of the California Class.

88.    Pursuant to the California Customer Records Act, businesses are required to take all reasonable steps to destroy or arrange for the destruction of customer records within its custody or control containing personal information that is no longer to be retained by the business. Cal. Civ. Code § 1798.81.

89.    Customer records may be destroyed through the erasure of information or the modification of personal information in those records in a manner that renders the personal information unreadable or undecipherable through any means. Cal. Civ. Code § 1798.81(b)-(c).

90.    As a result of its failure to erase, destroy or render indecipherable or unreadable the personal information of its users, Vizio has violated Cal. Civ. Code § 1798.81.

91.    Pursuant to Cal. Civ. Code § 1798.84, Plaintiffs, on behalf of themselves and on behalf of the Class, seek an order enjoining Vizio's conduct

described herein, awarding of attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5, and providing such other relief as the Court deems just and proper.

**Count V**

**Violation of California's Unfair Competition Law ("UCL"),**

**Cal. Civ. Code § 17200, *et seq*.**

**(On Behalf of all Plaintiffs and the Nationwide Class and the California Class)**

92.     Plaintiffs incorporate the foregoing allegations as if full set forth herein.

93.     This cause of action is asserted by all Plaintiffs on behalf of themselves and the Nationwide Class and also by Plaintiff Dedrick on behalf of the California Class.

94.     The California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, et seq.,) protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

95.     The UCL prohibits any unlawful, unfair, or fraudulent business acts or practices, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

96.     In violation of the Video Privacy Protection Act, 18 U.S.C. §§ 2710, and Cal. Civ. Code § 1799.3(a), Defendants monitored, tracked, and transmitted personal viewing histories and personally identifiable information to third parties without Plaintiffs' and Class Members' consent.   Violation of these statutes constitutes a violation of the UCL.

97.     The willful practice and disclosure of Plaintiffs' and Class Members' personal viewing history and personally identifiable information constitutes a material term of the Smart TV transactions at issue as they are likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product or

24 – CLASS ACTION COMPLAINT

service.  The failure to inform consumers of these practices and that this personal information would be shared with and sold to third parties is materially misleading.

98.    Defendants' omission of this information was an act likely to mislead Plaintiffs and the Class Members acting reasonable under circumstances and constitutes a deceptive trade practice in violation of the UCL.

99.    Defendants violated the "unfair" prong of the UCL by, among other misconduct described in this Complaint, transferring Plaintiffs' and the Class Members' personal viewing habits and personally identifiable information without providing clear and conspicuous notice and without their consent.

100.    Defendants also made material omissions when speaking to Plaintiffs and Class Members through written materials.   As described fully above, Defendants failed to clearly and conspicuously inform consumers that once their Smart TVs were connected to the internet, Defendants would monitor, track, transmit and sell personal viewing histories and personally identifiable information to third parties without Plaintiffs' and Class Members' consent.

101.    Plaintiffs satisfy the requisite level of specificity for pleading a violation of §17200's protection against fraudulent business acts as alleged above. Particulars of the fraudulent omissions are summarized here:

a.    Defendants failed to clearly and conspicuously inform Plaintiffs and members of the Class that once their Smart TV was connected to the internet, Defendants would monitor, track, and transmit personal viewing histories and personal identifiable information to third parties without Plaintiffs' consent.

b.    The material omissions occurred in 2015, as to the named Plaintiffs.

c.      The relationship that gave rise to the duty to speak was by knowing that the Smart TV would, once connected to the internet, obtain confidential information, including viewing histories and personally identifiable information, and transmit that information to others without the knowledge or consent of the viewer.  Defendants had superior knowledge as to the information withheld, and such information was material.

d.      By engaging in the deceptive conduct, Defendants obtained substantial financial benefits by selling information about the Plaintiffs, including personally identifiable information, to unauthorized third parties.

102.   The injuries caused by the Defendants' conduct are not outweighed by any countervailing benefits to consumers or competition, and neither Plaintiffs nor the members of the Class could have reasonably avoided the injuries they sustained.

103.   Defendants intended that Plaintiffs and the members of the Class would rely upon Defendants' deceptive conduct and not be aware of or understand the necessity to disable the Tracking Software.

104.   The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business acts or practices in violation of Cal. Bus. & Prof. § 17200, *et seq.* Such acts and practices have not abated and will continue to occur unless enjoined.

105.   The unfair, unlawful, or fraudulent business acts or practices set forth above have and continue to injure Plaintiffs, members of the Class, and the general public and cause them harm.  These violations have unjustly enriched Defendants at the expense of Plaintiffs and the members of the Class.  As a result,

Plaintiffs, the Class Members, and the general public, are entitled to restitution, injunctive relief, and other equitable relief.

106.   The unfair, unlawful, or fraudulent business acts or practices at issue in this Complaint and carried out by Defendants took place in the course of trade or commerce.  Plaintiffs and Class Members lost money or property (or lost use of their money and interest) as a proximate result of Defendant's conduct.

107.   By this action, Plaintiffs and the Class Members request that Defendants be ordered to make restitution of any money, property, goods, or services that may have been acquired through their violation of Cal. Bus. & Prof. Code § 17200, as alleged in this Complaint.

108.   Pursuant to Cal.Code of Civil Procedure § 1021.5 and the Court's inherent equitable power, Plaintiffs and the Class seek recovery of their costs of suit and reasonable attorneys' fees.

**Count VII**

**Violation of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq*.**

**(On Behalf of all Plaintiffs, the Nationwide Class and the California Class)**

109.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

110.   This cause of action is asserted by all Plaintiffs on behalf of themselves and the Nationwide Class and also by Plaintiff Dedrick on behalf of the California Class.

111.   This cause of action is brought pursuant to the Consumer Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA")

112.   The CLRA includes a comprehensive statutory structure designed to prohibit deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal,

family, or household purposes.  The self-declared purpose of the CLRA is to protect consumers against unfair and deceptive practices and to provide efficient means of securing such protection.

113.  Plaintiffs and members of the Class are "consumers," within the meaning of Cal. Civ. Code § 1761(d), because they are individuals who purchased one or more VIZIO Smart TVs for personal and/or household use.

114.  Each Defendant is a "person" as defined by Cal. Civ. Code § 1761(c), because, as set forth above, each Defendant is a corporation.

115.  VIZIO Smart TVs are "goods" within the meaning of Cal. Civ. Code § 1761(a), in that they are tangible products bought by Plaintiffs and members of the Class for personal, family, and/or household use.

116.  Defendants' sale of their products, including Smart TVs, to wholesalers and retailers throughout California constitutes "transaction[s] which were intended to result or which result[ed] in the sale" of goods to consumers within the meaning of Cal. Civ. Code § 1761(e) and 1770(a).

117.  Plaintiffs have standing to pursue this claim because they have suffered injury in fact and have lost money as a result of Defendants' actions as set forth herein.  Specifically, Plaintiffs purchased VIZIO Smart TVs.  Had Plaintiffs known that these Smart TVs would be used by VIZIO to collect, retain and disseminate, for profit, their personal identifiable information, including their viewing habits, details regarding his home network, and other personal information, with third parties, they would not have purchased the VIZIO Smart TVs.

118.  Section 1770(a)(5) of the CRLA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, use, benefits, or quantities which they do not have…."  Defendants represented that VIZIO Smart TVs were for the personal enjoyment of televised

entertainment by their customers, when, in fact the Smart TVs were a means by which VIZIO collected, retained, and disseminated for profit the personal information of Plaintiffs and members of the Class in violation of various laws as set forth herein.

119.   Section 1770(a)(9) of the CLRA prohibits anyone from '[a]dvertising goods or services with intent not to sell them as advertised."  On information and belief, Defendants are, or by the exercise of reasonable care should be, aware of the governing regulations and their purpose, and the necessity to exercise reasonable care to ensure compliance with governing regulations and their purpose. By introducing VIZIO Smart TVs into the stream of commerce as a product to be used for the personal, private viewing enjoyment of its customers, and then extracting and selling their personal viewing and other information to third parties for profit notwithstanding this knowledge, Defendants thus intentionally sold misbranded products.

120.   Plaintiffs have attached hereto a declaration of venue as required by Cal. Civ. Code §1780(d).

121.   Plaintiffs seek an order enjoining the acts and practices described above, and awarding attorneys' fees and costs and will amend this Complaint to seek damages under the CLRA.

## Count VIII

### Violations of State Consumer Laws Other Than California

### (On Behalf Of Plaintiffs and the Non-California Separate

### State Classes)

122.   Plaintiffs, other than Dedrick, incorporate by reference the foregoing allegations as if fully set forth at length herein.

123.   Plaintiffs and members of the Non-California Separate State Classes are consumers who purchased various VIZIO Smart TV's that accessed, collected,

1    monitored and sold for profit their private information, including their viewing

2    habits in the privacy of their own homes, without their knowledge or consent.

3        124.   Defendants engaged in trade and commerce.   Defendants' acts,

4    practices, conduct and omissions were done in the course of their business in

5    connection with the marketing or sale of goods and services throughout the United

6    States.

7        125.   Defendants' conduct, as described above in this Complaint, constitute

8    unfair methods of competition and unfair, deceptive, unconscionable, fraudulent

9    and/or unlawful acts or practices in violation of the following state consumer

10   statutes:

11           a.    The Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-

12   5(5), (7) and (27), *et seq.*;

13           b.    The Florida Deceptive and Unfair Trade Practices Act, Fla.

14   Stat. Ann. § 501.204(1), *et seq.*;

15           c.    The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-

16   1-393(a) and (b)(2), (5) and (7), *et seq.*;

17           d.    The  Maryland  Consumer  Protection  Act,  Md.  Code

18   Commercial Law, § 13-301 (1) and (2)(i), and (iv) and (9)(i), *et seq.*;

19           e.    New York Business Law, N.Y. Gen. Bus. Law § 349(a);

20           f.    The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann.

21   § 1345.02(A) and (B)(1) and (2), *et seq.* Pursuant to Ohio Rev. Code Ann. §

22   1345.09(B), Defendant's alleged acts must have been previously declared to be

23   deceptive or unconscionable under Ohio Rev. Code Ann. § 1345.02 or § 1345.03.

24           g.    The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §

25   646.608(1)(e)(g) and (u), *et seq.*; and

26           h.    The Texas Deceptive Trade Practices- Consumer Protection

27   Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*;

28

30 – CLASS ACTION COMPLAINT

126.   Plaintiffs other than Dedrick bring this action on behalf of themselves and all similarly situated persons in the proposed aforesaid Non-California Separate State Classes for the relief requested and for the public benefit in order to promote the public interests in the provision of truthful, non-deceptive information and cessation of the wholesale and unsolicited invasion of Smart TV users' privacy for pecuniary gain, without their knowledge or consent and to protect Plaintiffs and Class Members and the public from Defendants unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful practices.   Defendants' wrongful conduct as alleged in this Complaint has had a widespread impact on millions of consumers across the United States, including causing harm to their personal interests and rights.

127.   Any written pre-suit demands under state consumer laws providing for such demands, including, without limitation, Ala. Code § 8-19-10(e), Cal. Civ. Code § 1782(a), Ga. Code Ann. § 10-1-399(b), Ind. Code § 24-5-0.5-5(a), and Tex. Bus. & Com. Code Ann. § 17.505(a) would be entirely futile.   Defendants have long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous actions by various other plaintiffs against it arising from the public exposure of VIZIO's practices.

128.   Plaintiffs have provided notice of this action and a copy of this Complaint to the appropriate Attorneys General pursuant to state consumer laws providing for such notice, including Ore. Rev. Stat. Am. § 646-638(s).

## Count IX

## Unjust Enrichment

### (On Behalf of all Plaintiffs, the Nationwide Class, the California Class and the Separate Non-California State Classes)

129.   Plaintiffs incorporate the foregoing allegations as if set forth herein.

130. This cause of action is asserted by all Plaintiffs on behalf of themselves and the Nationwide Class, by Plaintiff Dedrick on behalf of the California Class, and by each of the non-California Plaintiffs on behalf of themselves and their respective separate Non-California State Classes.

131. Plaintiffs and the members of the Class conferred a benefit on Defendants in the form of collected viewing data and personal identifiable information collected through VIZIO's Smart Interactivity software.

132. Defendants have been unjustly enriched in retaining the revenues derived from the dissemination of Plaintiffs' viewing data and personal information to third parties.

133. The retention of these revenues by Defendants is unjust and inequitable because Defendants collected this personal information and viewing data without the informed consent of Plaintiff and members of the Class.

134. Plaintiffs and members of the proposed classes were injured as a direct and proximate result of Defendants' misrepresentations and omissions because they unknowingly provided personal viewing data and personal information that was then disseminated by VIZIO to third parties for profit, and further because Plaintiffs and members of the Class would not have purchased VIZIO Smart TVs had they known that, by way of the Smart Interactivity Software, VIZIO was collecting and disseminating their personal and viewing information.

135. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and the members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the members of the Class for their unjust enrichment, as ordered by the Court.

**Count X**

**Invasion of Privacy**

**(On Behalf of all Plaintiffs, the Nationwide Class, the California Class and the Non-California Separate State Classes)**

136.   Plaintiffs incorporate by reference the foregoing allegations as if set forth herein.

137.   This cause of action is asserted by all Plaintiffs on behalf of themselves and the Nationwide Class, by Plaintiff Dedrick also on behalf of the California Class, and by the non-California Plaintiffs also on behalf of themselves and their respective Non-California Separate State Classes.

138.   Defendants, via the VIZIO Smart TV's invaded Plaintiffs' and the Class Members' right to privacy by their unauthorized access to and monitoring and dissemination of Plaintiffs' and Class Members' viewing habits and personal, private information, and by sharing for profit such habits and information with third parties as set forth above.

139.   Plaintiffs' and the Class Members' used their Smart TVs in the privacy of their own homes and with the reasonable expectation that their viewing choices, habits and conduct in the privacy of their homes were protected from unauthorized disclosure and would not be spied upon and monitored without their consent.

140.   As a proximate result of Defendants' conduct as described above, Plaintiffs' and the Class Members' private viewing habits and information was accessed by and sold to third parties for pecuniary gain without their prior written authorization, causing Plaintiffs and the Class Members harm.

141.   The intrusion was offensive and objectionable to Plaintiffs, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiffs' and Class Members' personal habits and private information were spied upon,

monitored and ultimately sold and disclosed without prior written authorization or consent of Plaintiffs and the members of the Class.

142.   Defendants are guilty of oppression, fraud, or malice by permitting the unauthorized access to monitoring and disclosure of Plaintiffs' and the Class Members' personal information with a willful and conscious disregard of Plaintiffs' and the Class Members' right to privacy.

## VII.   PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, request that the Court enter judgment against Defendants as follows:

1.   A declaration that Defendants are financially responsible for notifying members of the Class about the true nature of VIZIO Smart TVs;

2.   An award to Plaintiffs and the members of the Class of compensatory, direct, consequential, statutory, and incidental damages;

3.   An award to Plaintiffs and members of the Class of compensatory, exemplary, punitive and statutory penalties and damages, including interest, in an amount to be proven at trial (except that Plaintiffs do not seek damages under the CLRA at this time);

4.   A declaration that VIZIO must disgorge, for the benefit of Plaintiffs and members of the Class, all or part of the ill-gotten profits received from the sale of their personally identifiable information to third parties, and make full restitution to Plaintiffs and members of the Class;

5.   Injunctive relief requiring Defendants to implement measures that adequately protect the personal information of Plaintiffs and the members of the Class and that complies with the VPPA, the ECPA, the California's Customer Records Act and the CLRA;

6.    An award of attorneys' fees, costs, and expenses, as provided by law, or equity, or as otherwise available;

7.    An award of pre-judgment and post-judgment interest, as provided by law or equity; and

8.    Such other or further relief as may be appropriate under the circumstances.

DATED:  April 11, 2016                          Respectfully submitted,

                                                AITKEN AITKEN COHN
                                                DARREN AITKEN (145251)
                                                darren@aitkenlaw.com
                                                ASHLEIGH AITKEN (224125)
                                                ashleigh@aitkenlaw.com


                                                /s/ ASHLEIGH AITKEN
                                                ASHLEIGH AITKEN

                                                3 MacArthur Pl #800
                                                Santa Ana, CA 92707
                                                Phone:  (714) 434-1424
                                                Fax:  (714) 434-3600

                                                GIRARD GIBBS LLP
                                                ERIC H. GIBBS (178658)
                                                ehg@classlawgroup.com
                                                ANDRE M. MURA (298541)
                                                amm@classlawgroup.com
                                                LINDA LAM (301461)
                                                lpl@classlawgroup.com
                                                One Kaiser Plaza, Suite 1125
                                                Oakland, CA 94612
                                                Phone: (510) 350-9700
                                                Fax:(510) 350-9701

                                                BARRACK, RODOS & BACINE
                                                STEPHEN R. BASSER (121590)
                                                sbasser@barrack.com
                                                SAMUEL M. WARD (216562)
                                                sward@barrack.com
                                                600 West Broadway, Suite 900
                                                San Diego, CA 92101
                                                Phone:  (619) 230-0800
                                                Fax:  (619) 230-1874

35 – CLASS ACTION COMPLAINT

BARRACK, RODOS & BACINE
JULIE B. PALLEY
jpalley@barrack.com
2001 Market Street, Suite 3300
Philadelphia, PA 19103
Phone:  (215) 963-0600
Fax:  (215) 963-0838

EMERSON SCOTT, LLP
JOHN G. EMERSON
jemerson@emersonfirm.com
830 Apollo Lane
Houston, TX 77058
Phone: (281) 488-8854
Fax:  (281) 488-8867

EMERSON SCOTT, LLP
DAVID G. SCOTT
dscott@emersonfirm.com
The Rozelle-Murphy House
1301 Scott Street
Little Rock, AR 72202
Phone:  (501) 907-2555
Fax:  (501) 907-2556

JOHNSON VINES PLLC
CHRISTOPHER D. JENNINGS
cjennings@johnsonvines.com
2226 Cottondale Lane, Suite 210
Little Rock, AR 72202
Phone: (501) 372-1300
Fax: (888) 505-0909

*Attorneys for Plaintiffs William Lara, Tommie Pye, Ronald Owens, Edward Delgado, Roshanda Jackson, Paul Ciraldo, Teddy Wilson, Forrest Dedrick, Dan Hanson, and Chris Rizzitello*

## **Declaration of Ashleigh Aitken Pursuant to**

## **California Civil Code § 1780 (d)**

I, Ashleigh Aitken, hereby declare as follows:

1.     I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

2.     Venue is proper in this Court because (1) Defendants' business principal places of business are located in this District; (2)  many of the acts and transactions giving rise to this action occurred in this District, (3) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the manufacture, distribution and sale of their products in this District; and (4) are subject to personal jurisdiction in this District.

3.     All of the Defendants maintain their principal executive offices at 39 Tesla, Irvine, California.

4.     This action is commenced in the United States District Court for the Central District of California.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on April 11, 2016, in San Diego, California.

/S/ ASHLEIGH AITKEN

ASHLEIGH AITKEN